## COOPER TEA PACKET CO., Inc., v. UNITED GROCERS' CO., Inc.

### No. 4916.

District Court, E. D. New York.

Jan. 29, 1931.

Frank J. Kent, of New York City (Frank J. Kent, George Ramsey, and Charles F. Chisholm, all of New York City, of counsel), for plaintiff.

Henry R. Ashton, of New York City (William W. Dodge and Parker Dodge, both of Washington, D. C., of counsel), for defendant.

GALSTON, District Judge.

This is a patent suit brought for the alleged infringement of letters patent No. 1,629,612 issued to Cooper Tea Packet Company, Inc., as assignee of the inventor, Simon Cooper. The application was filed March 23, 1921, and the patent was issued May 24, 1927. Claims 1, 2, 3, 7, 8, 9, and 10 are in issue.

It appears that the defendants are dealers in tea bags, and their alleged infringement consists of the sale of the infringing tea bags. The bags were manufactured by McCormick & Co. of Baltimore, but the suit is actually defended by the Wright Automatic Packing Machine Company of Durham, which company manufactures machines for producing bags of the character in suit.

The patent states that the invention relates to the packeting of materials such as tea. The specification shows a method by which this packeting is performed. Blanks of some suitable textile material, and generally triangular in form or heart-shaped, as shown in Fig. 2, are employed. The blank is doubled and folded on a median line. The side walls are secured together by means of a row of stitching "extending from the apex along and around the meeting edges to a point short of the doubled edge." The inventor says that a filling mouth is thus left, through which the tea or other material is placed. Then the stitching is continued to close the mouth over the material. To provide a sus-

pension cord for the bag, the stitching is continued past the end of the bag and through the edge of an identification tag or label.

Claim 3, which includes all the elements of the invention save the tag, will suffice to develop the discussion. The claim reads as follows:

"3. A packet for tea or other material comprising a symmetrical blank doubled on itself and a row of stitching connecting the entire length of the meeting edges of the blank to provide a completely closed packet, and said row of stitching being continued beyond the blank to provide a supporting cord."

If the claim is valid, the defendant infringes. As bearing materially on the question of validity of this and other claims of the patent is the public use of McCormick & Co. of Baltimore.

Some time in 1915, Albert H. Johnson, then the head of the tea department of McCormick, visited the Panama-Pacific Exposition held in San Francisco, and there saw a gauze tea bag. Some time in that year, or early in 1916, he experimented to ascertain the practicability of manufacturing and marketing a form of tea bag known as the "bunch bag." This bag consisted of gauze gathered around a quantity of tea and tied with a string, which at its other end was tied to a tag. McCormick & Co. in 1916 and 1917 made and sold tea bags of this type.

In 1916 and 1917 a second form of this kind of tea bag was made and sold by McCormick & Company. It consisted of a strip of gauze folded and sewed along two edges, then turned inside out, so that the edges of the seams were within the bag, and then filled. The mouth was then tied with a string, to the other end of which was attached a tag. Sales of these bags were continued for a number of years to such trade as demanded that type of pouch bag.

However, late in 1917, or, at the earliest, early in 1918, McCormick & Co. purchased an overseaming sewing machine for use in making tea bags. At first this machine was used to sew the open mouths of what is described as the second McCormick bag. The overseamed stitches which closed the mouth of the turned-in and filled bag were chained off and stitched into an identifying tag. This procedure was continued for a matter of five or six weeks. This may be designated as the third type of McCormick bag.

The fourth and final form was a tea bag made early in 1918. The operation was described by the witness Luttrell, now the head

of the tea department of McCormick & Co., and at that time an assistant of Johnson. He said:

"Q29 After that did you develop any other type of bag? A. It was about that time; we didn't use that completely. We used to have the bags made like they are on the same machine, that is, making the bag first by running a sort of tubing through this machine which would cut and sew the edge of it, and the girl, after running a quantity of that, would go back into the same machine and cut off the bag; they were cut and sewed at the same time."

"Q30 Then what was done? A. Then the girl would clip those separate bags, and they would be filled when orders came in, and then sewed up in the same manner, running them through the same machine and sewing the mouth of the bag, extending it out to the tag, and attaching the tag by the same sewing machine."

Now it is important to note that the fourth type of bag made by McCormick & Co. is identical with the alleged infringing McCormick bag in suit. Luttrell testified that these bags were made up in 1918.

The testimony of Luttrell in respect to the McCormick bags is amply confirmed by other witnesses. The witness Dorothy McDonald said that she operated the sewing machine on which the tags were made, and gave a clear description of the method of manufacture. She adequately fixed the time of certain operations by reference to the marriage of the witness Cahill during the first week of April, 1918. She seemed entirely clear that the stitching into the tag, a point emphasized so much by the plaintiff, was part of the operation. She identified plaintiff's Exhibit 2 (defendant's bag) as essentially similar to the bags made by McCormick & Co. in 1918 and sold to the Southern Hotel and the City Club during that year.

The witness, Agnes Cahill Zolkowski, confirms the testimony of Dorothy McDonald. She worked for McCormick & Co. during the second period of her employment from 1916 to the middle of May, 1918, and fixed the date because of her marriage on April 1st, 1918. She testified:

"Q42 How did the bag and the ticket go into the sewing machine? A The ticket went in with the point so as to keep it from being upside down.

"Q43 Did the sewing machine sew into the ticket? A It did make several stitches.

"Q44 Then? A Then it left a small space for the next bag to do the same.

"Q45 Where did the stitching go? A The stitching went to the other bag, and then when it got to the end of that it went to the ticket and then on to a small space and then another bag.

"Q46 When she was finished what did she have? A She had a bag with a small string, and then a ticket on each one of the bags. The bags had to be cut, had to be trimmed, each bag.

"Q47 Who did that? A Some of the other girls.

"Q48 You do not know who? A No.

"Q49 How were they trimmed? A Trimmed about one-eighth inch from the ticket.

"Q50 With what? A Scissors.

"The Court: How far was the ticket from the edge of the bag, the corner of the bag?

"The Witness: Well, just far enough to keep the package from going down to the bottom of whatever you used it for, several inches."

The witness also remembered that some of the tags bore the name "Southern Hotel" and "City Club."

Another witness, William J. Thomas, now employed by the Baltimore Wholesale Grocery Company, had been employed by McCormick & Co. from March, 1918, to 1924 or 1925. Entries in the tea department time book in December, 1918, were made in his handwriting, but he had been in the department before keeping the time book. He was transferred from the tea department on April 12, 1919. While working in the tea department, he saw individual gauze tea bags made, having a suspending cord with a tag attached. He said:

"The only bag that I recall is the little square pillow-shaped bag, as I call it, that was filled by hand by the girls, and then the top sewed by machine with a tag attached, sewed to the string."

Written records consisting of time books, cost records, tag-printing records, all afford corroboration of the manufacture and sale, as early as 1918, of the Southern Hotel tag and bag.

Some question arose as to whether the photograph Exhibit R, illustrating the bags made and sold with string and tag attached, in 1918, shows the tag, not stitched, but tied, to the string. Were the defendant's proofs as to the McCormick use to rest solely on the

photograph, it could be said that the photograph raises some doubt as to whether the string was stitched to the tag. I cannot, in my view of the case, however, regard this as material, for the overwhelming and absolutely convincing story of the witnesses proves that the string customarily was stitched to the tag. But whether it was stitched or tied cannot be a matter of great consequence, for two reasons: First, if the prior art showed all the elements of this invention save that the string was tied to the tag instead of being stitched to it, certainly it would not involve invention to stitch the tag instead of tying it to the string. Particularly must one take this view of the inventive act, since the claims are not for a method of manufacture but define a product. Secondly, only claims 2 and 8 include the tag as an element, and neither claim limits the attachment of the tag to the chain by sewing the stitches into the tag.

Claim 2 says: "The line of stitches being continued beyond said chain and passed through said tag." The word "passed" is certainly broader than "sewed," and, if the chain of stitches was tied through a perforation in the tag, it would be "passed" through the tag. Consequently, whether the photograph, Defendant's Exhibit R, shows a stitching to the tag or a perforation through which the chain passed is immaterial. The claim is met by the device shown on the photograph.

Claim 8 contains an error which should have been corrected before the patent issued, but, assuming that the court had the power to read the claim as referring to claim 7 instead of claim 9, the defendant has but this language to meet in respect to the tag: "There is a tag to which the outer end of the chain is attached." The McCormick tag shown in the photograph shows a tag "attached" to the chain.

For the reasons stated, I believe all of the claims are invalid.

A decree may issue dismissing the complaint. Settle decree on notice.